**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

John P.,
Petitioner Below, Petitioner

**FILED**

**January 17, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 18-0518** (Gilmer County 16-C-21)

Charles Williams, Superintendent,
Huttonsville Correctional Center,
Respondent Below, Respondent

**MEMORANDUM DECISION**

Petitioner John P., by counsel Brian W. Bailey, appeals the April 16, 2018, order of the Circuit Court of Gilmer County denying his petition for a writ of habeas corpus.[1] Respondent Charles Williams, Superintendent, Huttonsville Correctional Center, by counsel Holly M. Flanigan, filed a response in support of the circuit court's order.[2] On appeal, petitioner argues that the circuit court erred in denying his claims of ineffective assistance of counsel and in finding that he was competent to understand his criminal and habeas corpus proceedings.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2014, the Gilmer County Child Protective Services ("CPS") office received a referral alleging that petitioner had sexually abused his daughters. A CPS worker initiated an interview with petitioner while law enforcement was present. A law enforcement officer informed petitioner of his *Miranda*[3] rights prior to the interview. Petitioner indicated that he understood those

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner listed Ralph Terry, former Warden of Mt. Olive Correctional Complex, as respondent in this matter. However, petitioner is now housed at the Huttonsville Correctional Center, where Charles Williams is the superintendent. Accordingly, the appropriate party has been substituted per Rule 41(c) of the West Virginia Rules of Appellate Procedure.

[3]*Miranda v. Arizona*, 384 U.S. 486 (1966).

1

rights and proceeded with the interview. Throughout the course of the interview, petitioner admitted to sexually abusing his daughters as alleged and was subsequently arrested.

In November of 2014, petitioner was indicted on three counts of first-degree sexual assault, three counts of sexual abuse by a parent, guardian, or custodian, and three counts of incest. Petitioner was appointed counsel and was ordered to participate in a competency evaluation. Following the receipt of petitioner's competency evaluation, the circuit court found that he was competent to stand trial. Specifically, the circuit court found that "the results of the Wechler Adult Intelligence Scale-IV showed [petitioner's] intellection [sic] functioning to be in the Intellectual Disability Range; however, this is an underestimat[ion] of the true abilities due to inconsistent effort [by the petitioner] on the tasks;" "[t]hat [petitioner] suffers from intellectual disability, mild, versus Borederling [sic] Intellectual Functioning; Malingering, Provisional, Adjustment Disorder with depressed mood[;]" and petitioner was "competent to stand trial in that he has an adequate factual and rational appreciation of the procedure against him and is able to assist in his own defense." Neither party challenged the circuit court's finding that petitioner was competent to stand trial.

In February of 2015, petitioner entered a no contest plea to two counts of incest. In April of 2015, the circuit court sentenced petitioner to an aggregate term of ten-to-thirty years of incarceration. Further, the circuit court ordered petitioner be subject to for fifty years of extended supervision upon his release from incarceration pursuant to West Virginia Code § 62-12-26. Petitioner did not appeal this order.

Petitioner, by counsel, filed a petition for a writ of habeas corpus in August of 2016. Among the grounds raised, petitioner asserted the following claims that are relevant to this appeal: "Involuntary Guilty plea," alleging that previous counsel pressured petitioner into pleading guilty; "Competency to Stand Trial," alleging that he was intellectually incapable of standing trial; "Language Barrier to Understand Proceedings," alleging that he was unable to follow the basic courtroom terminology and procedures; "Unintelligent Waiver of Counsel," alleging that he was unable to understand that he had a right not to waive his *Miranda* rights; and "Ineffective Assistance of Counsel" alleging, based on the totality of his allegations, "as well as other good and sufficient evidence which may be adduced during an Omnibus Habeas Corpus proceeding," that he was denied effective assistance of counsel.

In March of 2017, the circuit court held an omnibus hearing and heard testimony from petitioner, his trial counsel, the investigating law enforcement officer, and the investigating CPS worker. Ultimately, the circuit court denied petitioner relief by a detailed twenty-eight page order entered on April 16, 2018. It is from this order that petitioner appeals.

Our review of the circuit court's order denying petitioner's petition for a writ of habeas corpus is governed by the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law

2

are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner argues that the circuit court erred in denying him relief based on his ineffective assistance of counsel claim because it is unclear whether a motion to suppress his statements to law enforcement was filed. However, we find that petitioner is entitled to no relief on this claim because he failed to show that he raised this particular ineffective assistance of counsel claim below. The circuit court noted that petitioner raised ineffective assistance of counsel based on allegations that counsel "did not file an appeal, did not subpoena witnesses, and based on the cumulative effect of all errors raised in the petition," but does not mention an assertion that counsel failed to file a motion to suppress petitioner's statements to law enforcement. Moreover, petitioner fails to cite to a place in the record to show that he did, in fact, preserve this claim. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure provides that

> [t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Further, this Court has previously held that "'[o]ur general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, we decline to address this assignment of error.

Petitioner next argues that the circuit court erred in denying him relief based on his inability to comprehend the proceedings. However, the circuit court fully addressed this argument below. Because we find no clear error or abuse of discretion in the circuit court's order or the record before us, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignment of error raised on appeal and direct the Clerk to attach a copy of the circuit court's April 16, 2018, "Final Order on Petition for Writ of Habeas Corpus" to this memorandum decision.

For the foregoing reasons, we affirm the circuit court's denial of petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED**: January 17, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

3

19-0518

RECEIVED
4|19|18

IN THE CIRCUIT COURT OF GILMER COUNTY, WEST VIRGINIA

2018 APR 16 AM 10: 42

JOHN M    , P

                **Petitioner,**

v.                                    **Case Number: 16-C-21 and 33**
                                        **(Criminal Case: 14-F-33)**

**DAVID BALLARD, Warden**
**Mount Olive Correctional Complex,**

                **Respondent.**

## FINAL ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is post-conviction petition for writ of habeas corpus relief brought pursuant to the provisions of West Virginia Code § 53-4A-1, et seq. wherein the petitioner is challenging his felony plea convictions in his underlying criminal case from this jurisdiction, to wit: 14-F-33. Previously, this Court held an omnibus hearing on March 13, 2017, where there appeared the petitioner in person and with counsel, Brian W. Bailey and the respondent by and through counsel, Gerald Hough Gilmer County Prosecuting Attorney. The petitioner did call David Karickhoff, Rick Brewer, WVSP Trooper Raynor and himself as witnesses and all were subject to cross-examination. Thereafter, the petitioner did rest, and the respondent rested with no witnesses. Thereafter, the Court entered a briefing schedule and, in conjunction therewith, upon omnibus counsel's motion did order transcripts of the plea and sentencing hearing be prepared. Whereupon, the Court took the matter under advisement and informed the parties that after the transcripts were prepared and the briefs were filed, a written decision would follow.

Having afforded a meaningful and plenary review of the evidence of record, the parties' memoranda submitted herein and the applicable law this Court hereby **FINDS, CONCLUDES** and **ORDERS** as a matter of law as follows:

## I. FINDINGS OF FACT

1. This is a petition for post-conviction habeas corpus relief brought pursuant to the provisions of W.Va. Code § 53-4A-1, et seq.

2. The Court finds it has jurisdiction in this matter, in that the petitioner is challenging his plea conviction from the Circuit Court of Gilmer County in felony case, to wit: 14-F-33. This Court takes judicial notice of the record in that case, in addition to the trial court's rulings with respect thereto.

3. During the November 2014 term of court, the grand jury returned a nine count indictment against the petitioner in the underlying felony case. He was indicated for three counts of Sexual Assault-First Degree (Counts I, III and III); three counts of Sexual Abuse by a Parent (Counts IV, V and VI); and three counts of Incest (Counts VII, VIII and IX).

4. Upon motion of defense counsel, a competency evaluation of the defendant was ordered pursuant to the provisions of W.Va. Code § 27-6A-1(a) Following receipt of the psychiatric evaluation performed by psychiatrist Dr. Timothy Thistlewaite, M.D. and licensed psychologist, Rosemary L. Smith, Psy. D., the trial court did by Order entered on or about December 31, 2014, find, by a preponderance of the evidence, that the defendant was competent to stand trial. Although informed of the right to an evidentiary hearing on the matter, at a subsequent hearing regarding the evaluation on January 12, 2015, this finding was not challenged by either party.

5. Subsequent thereto, on February 11, 2015, the petitioner entered a no contest plea in that matter to two counts of felony Incent, in violation of W.Va. Code § 61-8-12(b) under Counts VIII and IX of the indictment.

6. On April 29, 2015, the petitioner was sentenced to the penitentiary of this State to no less

than five (5) nor more than fifteen (15) years on both counts, with those sentences to run consecutively making a total effective sentence of not less than ten (10) nor more than thirty (30) years. The petitioner was further required to register and be under supervision as a sexual offender for fifty (50) years upon his release from incarceration pursuant to W.Va. Code § 62-12-26. The trial court determined with credit for time served, the effective sentence date was May 9, 2014.

7. David Karickhoff was appointed to represent the petitioner in his criminal proceedings

8. The record reflects that transcripts of both the aforesaid plea and sentencing hearings have been prepared and filed as part of the record herein. The Court takes judicial notice of those transcripts and incorporates the same by reference, verbatim herein.

9. The record further reflects that two separate case numbers were inadvertently assigned to this case, to wit: 16-C-21 and 16-C-33. The Court hereby consolidates the record in 16-C-21 into 16-C-33.

10. The record reflects that both the petitioner and Mr. Bailey executed a *Losh v. McKenzie*, 277 S.E.2d 606 (1981) checklist acknowledging the nature of habeas corpus proceedings and that any grounds not raised would be deemed forever waived.

11. An omnibus hearing was convened in this matter on March 13, 2017, and from that hearing this Court makes the following factual findings:

### Testimony of David Karickhoff

12. Mr. Karickhoff testified telephonically during the omnibus hearing. The record further reflects that no party objected on the record to him testifying by phone.

13. Mr. Karickhoff recalls the underlying cases and the offenses charged.

14. He testified that he did not have reason to believe that the petitioner did not understand

their communications. Mr. P_____ ˑ did not always agree with the evidence or explanation of counsel but at no time did he appear to acknowledge that he failed to understand what was being told to him.

15. Mr. Karickhoff testified he felt there was effective communication between himself and his client, in that he made it a point to meet with his client in person at the jail and the courthouse to make sure he understood what was being communicated to him because the petitioner had previously indicated his reading comprehension skills were low.

16. Mr. Karickhoff indicated he did not recall seeking a competency evaluation on either issue of competency to stand trial or criminal responsibility. However, he does recall his client undergoing a sex offender evaluation prior to sentencing.

17. He testified that he recalls the bond in the underlying criminal case being approximately $250,000 with condition of home confinement and that counsel did seek a bond reduction before the trial court but the same was denied.

18. Counsel recalled reviewing with his client, the statements he gave to both Trooper Raynor and CPS worker Rick Brewer. He further recalls seeking to suppress those statements and having those motions denied at the pre-trial hearing by the trial court.

19. Mr. Karickhoff does not recall receiving a list of witnesses the petitioner wanted subpoenaed to testify at trial in this case.

20. Counsel discussed with his client the right to a jury trial, his constitutional rights, his possible defenses and his right to remain silent. In doing so, Mr. Karickhoff stated he used a rights form commonly used by criminal defense attorneys in this State.

21. Mr. Karickhoff admits he was candid and blunt with his client about his cases, the evidence

and charges against him. However, despite this candidness, Mr. Karickhoff does not believe it had any bearing on his client's voluntary choice to enter into the no contest pleas in this case.

22. He recalls the trial court also informing his client of his constitutional rights during the plea taking process.

23. Counsel recalls arguing for alternative sentencing on behalf of his client at sentencing, as well as objecting to the condition of fifty-years extended supervision. He further recalls filing a motion for reconsideration of sentence but cannot remember if a hearing was ever set in the matter.

24. Mr. Karickhoff did not appeal the trial court's sentencing to the West Virginia Supreme Court of Appeals.

### Testimony of Rick Brewer

25. Mr. Brewer has been employed by the West Virginia Department of Health and Human Resources as a Child Protective Services' worker for approximately 25 years.

26. Mr. Brewer was conducting an investigation in a companion abuse and neglect case that arose out of the events leading to the charges in this case.

27. As part of this investigation he was present when the petitioner gave a recorded statement at the local DHHR office regarding the sexual offenses committed by the petitioner. He indicated collaborative efforts are common when investigation companion cases involving sexual offenses.

28. Mr. Brewer indicated he was presented when Trooper Raynor read Mr. P          of his Miranda rights advising him of his rights and the fact the interview was being recorded. The petitioner waived those rights and gave a statement. During that interview, the petitioner made inculpatory statements admitting to sexual relationships with his daughters.

### Testimony of Trooper Raynor

29. Trooper Raynor was the investigating officer regarding the sexual abuse allegations that

led to the charges in the underlying case.

30. The petitioner was advised of his Miranda rights prior to giving a statement and waived the same. There were not threats, promises, or coercive tactics used to procure the statement from him which included his admissions to the alleged sexual offenses.

31. Mr. P_____ appeared coherent, made not claim to illiteracy, did not appear to be suffering from withdrawal from drugs or alcohol, nor under influence of the same. He appeared to fully understands his constitutional rights and the effect of waiving the same. It was Trooper Raynor's opinion that his statement was freely and voluntarily given.

### Testimony of John P.

32. Mr. P_____ testified that he understood the nature of an omnibus proceeding, that he had gone over the *Losh* list with counsel and that he is raising all of his issues from which he seeks relief and that he understands all other issues not raised herein are forever waived.

33. The record reflects the Court advised and the petitioner acknowledged that he understood if this Court set aside the plea agreement in the underlying case, all of the original charges would be reinstated and the prosecution of the case would start anew. The record further indicates that after a brief recess to speak with habeas counsel, the petitioner indicated upon the record he understood and wished to proceed.

34. The petitioner testified he struggles to both read and right and has limited understanding of legal terminology; and he struggles to comprehend things in general.

35. The petitioner stated he met with Mr. Karickhoff approximately 10 to 12 times in person during his underlying case and that he had sufficient time to meet with Mr. Karickhoff about his case.

36. The petitioner stated he was informed about the jury trial process and his rights, but claims

he was never told he had the right to call witnesses on his own behalf. He further testified that he believes he was "pushed" by Mr. Karickhoff to take the plea agreement.

37. He claims he requested Mr. Karickhoff to get him a DNA test to prove his innocence but no such test was ever preformed.

38. The petitioner does not recall being threatened or coerced to give a statement or sign the plea agreement. He further did not think he made an admission to the sexual allegations, however he understands what sexual intercourse is. Further, he admitted that it was his signature on the written version of his statement to law enforcement. (Respondent's Exhibit #1).

## II.    SCOPE OF HABEAS CORPUS PROCEEDINGS

A petition seeking writ of habeas corpus relief post-conviction from criminal proceedings is an extraordinary remedy recognized by Article III, Section 4 of the West Virginia Constitution; and pronounced within West Virginia Code § 53-4A-1, *et seq*. Specifically, habeas corpus is a suit wherein probable cause therefor being shown, a writ is issued which challenges the right of one to hold another in custody or restraint, Syl. Pt. 4, *Click v. Click*, 98 W.Va. 419, 127 S.E.2d 194 (1925), and the sole issue presented in such proceedings by a prisoner is whether he or she is restrained of his liberty by due process of law. Syl. Pt. 1, *State ex rel. Tune v. Thompson*, 151 W.Va. 282, 151 S.E.2d 732 (1966). West Virginia Code § 53-4A-1(a) (1967) (Repl. Vol. 2000) contemplates the circumstances under which a post-conviction writ of habeas corpus is available, as follows:

> Any person convicted of a crime and incarcerated under sentence of imprisonment therefor who contends that there was such a denial or infringement of his rights as to render the conviction or sentence void under the Constitution of the United States or the Constitution of this State, or both, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under the common law or any statutory provision of this State, may, without paying a filing fee, file a petition for à writ of habeas corpus ad subjiciendum, and prosecute the same, seeking release from such illegal imprisonment, correction of the sentence, the setting aside of the plea, conviction and

sentence, or other relief, if and only if such contention or contentions and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated or waived in the proceedings which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings which the petitioner has instituted to secure relief from such conviction or sentence...

Courts have typically been afforded broad discretion in determining whether to grant a petition for post-conviction habeas corpus relief. In *Ravnell v. Coiner*, 320 F.Supp. 1117 (N.D.W.Va. 1970), the United States District Court for the Northern District of West Virginia explained that "[t]he decision as to whether to grant relief, deny relief, or to hold an evidentiary hearing on factual issues, if any exist, is a matter of discretion with the courts of West Virginia." *Id* at 1124, *citing* W.Va. Code §§ 53-4A-3 and 53-4A-7; *see also State ex rel. Valentine v. Watkins*, 208 W.Va. 26, 537 S.E.2d 647 (2000).

A significant and likewise overriding principle of any court's habeas corpus review is that "habeas corpus is not a substitute for an appeal and that a showing of error of a constitutional dimension is required in order to set aside a criminal conviction in a collateral attack by writ of habeas corpus." *State ex rel. Phillips v. Legursky*, 187 W.Va. 607, 608, 420 S.E.2d 743, 744 (1992). The West Virginia Supreme Court of Appeals has stated that habeas corpus "is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed. Syl. Pt. 4, *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 254 S.E.2d 805 (1979). In other words, ordinary trial error(s) not involving a constitutional violation(s) will not be reviewed in a habeas corpus proceeding. *McMannis*, 163 W.Va. at 137, 254 S.E.2d at 809. *See also Edwards v. Leverette*, 163 W.Va. 571, 258 S.E.2d 436 (1979)("[courts] will maintain a distinction, so far as post-conviction remedy is concerned, between plain error in a trial and error of constitutional

dimensions. Only the latter can be a proper subject of a habeas corpus proceeding.). With these standards in mind, this Court will proceed on the merits of the instant petition.

## III. DISCUSSION

In this instant petition, there are multiple grounds set forth upon which the petitioner believes he is entitled to habeas corpus relief. They are as follows: (1) involuntary guilty plea; (2) competency to stand trial or enter a guilty plea; (3) incapacity to stand trial due to drug use; (4) language barrier to understand proceedings; (5) unintelligent waiver of counsel; (6) failure of counsel to file an appeal; (7) consecutive sentences for same transaction/excessive sentence; (8) coerced confessions; (9) irregularities in arrest; (10) excessive or denial of bail; (11) refusal to subpoena witnesses; (12) constitutional errors in pre-trial evidentiary rulings; (13) sufficiency of evidence; (14) No factual basis for the guilty plea; and (15) ineffective assistance of counsel. Having reviewed these grounds the Court has consolidated these claims into five theories for relief: Competency, Involuntary Guilty Plea, Pre-Trial Defects, Excessive Sentence and Ineffective Assistance of Counsel. The Court will discuss each of these in turn.

### Competency

The petitioner raises multiple grounds challenging his competency during the criminal proceedings. It is argued that he has limited intellectual abilities, a low functioning level of literacy, and that inhibited his ability to fully and completing understand the nature of the proceedings or communications from counsel. Furthermore, the petitioner argues his diminished capacity is to such a degree that he lacked competency to stand trial for the offenses charged.

No principle is more firmly enmeshed in our country's criminal jurisprudence than the prohibition against subjecting a mentally incompetent defendant to trial. The United States Supreme Court has "repeatedly and consistently recognized that 'the criminal trial of an

incompetent defendant violates due process.' " *Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S.Ct. 1373, 1376, 134 L.Ed.2d 498 (1996) (quoting *Medina v. California*, 505 U.S. 437, 453, 112 S.Ct. 2572, 2581, 120 L.Ed.2d 353 (1992). Likewise, the West Virginia Supreme Court of Appeals has reiterated that "'[i]t is a fundamental guaranty of due process that a defendant cannot be tried or convicted for a crime while he or she is mentally incompetent.' *State v. Cheshire*, 170 W.Va. 217, 219, 292 S.E.2d 628, 630 (1982)." Syl. pt. 5, *State v. Hatfield*, 186 W.Va. 507, 413 S.E.2d 162 (1991). No person may be subjected to trial on a criminal charge when, by virtue of mental incapacity the person is unable to consult with his attorney and to assist in the preparation of his defense with a reasonable degree of rational understanding of the nature and object of the proceedings against him. Syl. Pt. 6, *State v. Barrow*, 178 W.Va. 406, 359 S.E.2d 844 (1987). A defendant has both a substantive and a procedural due process right to avoid being tried while mentally incompetent. In order to bring a successful substantive competency claim, a defendant must prove that he or she was, in fact, incompetent at trial. For a procedural due process claim, a defendant need only demonstrate that he or she was denied an adequate procedure for determining mental after the trial court was presented with evidence sufficient to prompt good faith doubt regarding incompetency. Further, a trial court has an affirmative duty to employ adequate procedures for determining competency once the issue has come to the attention of the court, whether through formal motion by one of the parties or as a result of information that becomes available in the course of the criminal proceeding. *State v. Sanders*, 209 W.Va. 367, 377 (2001). Moreover, the test for mental competency to stand trial and the test for mental competency to plead guilty are the same. Syl. Pt. 2, *State v. Cheshire*, 170 W.Va. 217 (1982).

The Court finds the facts on this issue to be uncontroverted. The record clearly reflects that the trial court granted defense counsel's motion for a competency evaluation pursuant to W.Va.

Code § 27-6A-1(a), et seq. Thereafter, the defendant was evaluated by a psychiatrist and psychologist, Dr. Thistlewaite and Dr. Smith, respectively. Based upon the findings of the evaluation and in accordance with W.Va. Code § 27-6A-1(d), the trial found by a preponderance of evidence:

1. The defendant, John M         ?          r, is a white male, 48 years of age.
2. The results of the Wechsler Adult Intelligence Scale-IV showed [defendant's], intellection functioning to be in the Intellectual Disability Range; however, this is an underestimated of the true abilities due to inconsistent effort [by the defendant] on the tasks.
3. That the defendant, suffers from intellectual disability, mild, versus Borederling Intellectual Functioning; Malingering, Provisional, Adjustment Disorder with depressed mood.
4. The defendant is competent to stand trial in that he has an adequate factual and rational appreciation of the procedures against him and is able to assist in his own defense.

Based on these findings the trial court deemed Mr. P           competent to stand trial. Despite being given notice of the right to an evidentiary hearing on the issue of competency, neither the defendant nor the State requested such a hearing on this issue. Therefore, because the findings of Dr. Thistlewaite and Dr. Smith went unchallenged this Court is of the opinion that the defendant's competency to stand trial is uncontested. As such, because the petitioner was properly afforded a competency evaluation in accord with the statutory provision set forth herein, this Court finds his procedural due process rights on the issue of mental competency were not violated as a matter of law.

Moreover, while this evaluation was preformed early in the pre-trial process, our state's highest has made it clear that while a trial court has a continuing duty to monitor a defendant for signs or concerns of incompetency:

> where a criminal defendant has already been afforded a competency hearing pursuant to W.Va. Code §§ 27-6A-1(d) and -2 and been found mentally competent to stand trial, a trial court need not suspend proceedings for purposes of permitted further psychiatric evaluation or conduction an additional hearing unless it is

presented with new evidence casting serious doubt on the validity of the earlier competency finding, or with an intervening change of circumstance that renders the prior determination an unreliable gauge of present mental capacity.

*State v. Sanders,* 209 W.Va. 367, 379 (2001). However, there is nothing before this Court to suggest that once the trial court made its finding as to competency that any new evidence evolved so as to require the trial court to revisit the issue of competency to stand trial. As such, this Court finds the defendant was at all times deemed competent through the pendency of his criminal proceedings. Additionally, while the petitioner testified during the omnibus proceeding that he did not understand or comprehend the nature of the proceedings, his charges, legal terminology or the numerous communications he had with trial counsel, he presented no medical evidence or testimony to otherwise suggest he suffered from such a mental disease or defect. Furthermore, Mr. Karickhoff conversely testified that Mr. P          albeit while not always receptive to counsel's legal advice, fully understood his explanations regarding the proceedings, charges, evidence and his constitutional rights. Therefore, this Court is of the opinion that the petitioner has failed to set forth any competent evidence to prove he was, in fact, incompetent during the underlying criminal proceedings. Having failed to establish a substantive due process violation on this issue, this claim must for relief must be denied as a matter of law.

### Involuntary Guilty Plea

Next, petitioner argues his no contest plea was involuntary. In support of this argument, it is advanced that trial counsel pressured him to take the plea; that he did not knowingly and voluntary enter a plea due to his use of pain medication; he plead guilty to offenses he did not commit, there was insufficient evidence for the trial court to accept the plea and he lacked the requisite intellectual ability to enter the plea. With respect to challenging guilty pleas on the basis of voluntariness, the United States Supreme Court has previously said that

[a] conviction after a plea of guilty normally rests on the defendant's own admission in open court that he committed the acts with which he is charged. That admission may not be compelled, and since the plea is also a waiver of trial-and unless the applicable law otherwise provides, a waiver of the right to contest the admissibility of any evidence the State might have offered against the defendant-it must be an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.

Further, the West Virginia Supreme Court has held that a guilty plea will not be set aside when a defendant had the assistance and advice of competent counsel and the Court's record reflects a sufficient inquiry into the knowing and voluntary nature of the plea. *See McMunn v. Richardson*, 397 U.S. 759 (1970); Syl. Pt. 3, *State ex rel. Burton v. Whyte*, 163 W.Va. 276 (1979); *Call v. McKenzie*, 159 W.Va. 191 (1975). Moreover, in *McKenzie* our state Supreme Court addressed the impenetrable soundness of a properly executed guilty plea, holding,

> [w]here the transcript of the colloquy which occurred between the court and the accused before the acceptance of the plea of guilty, and where that transcript conclusively demonstrates that there was a knowing and intelligent waiver of those rights necessarily surrendered as a result of a guilty plea, the issue is *res judicata* in a subsequent action in habeas corpus. . .

*Call v. McKenzie*, 159 W.Va. at 195. Likewise, the *Whyte* Court held that "[a] guilty plea based on competent advice of counsel represents a serious admission of factual guilt, and where an adequate record is made to show it was voluntarily and intelligently entered, it will not be set aside." Syl. Pt. 3, *State ex rel. Burton v. Whyte*, 163 W.Va. 276 (1979).

With respect to his claims that counsel pressured him to enter his plea and that he was under the influence of pain medication at the time he entered his plea, the petitioner offered no competent evidence during the omnibus hearing to support these averments. Further, the Court finds that during the plea hearing, the following colloquy took place between the trial court and the defendant, in pertinent part:

\*\*\*

THE COURT:. Mr. P            , you have any history of mental illness? Do you have any mental illness?

MR. P                No.

THE COURT: Are you addicted to drugs or alcohol?

MR. P                No.

THE COURT: Are you suffering any physical effects from withdrawal of drugs or alcohol?

MR. P                No.

(Plea Transcript pp. 30-31)
***

THE COURT: And has anyone promised you that this Court would place you on probation?

MR. P                No.

THE COURT: Has anyone told you this Court would not sentence you to the penitentiary?

MR. P                No.

THE COURT: Have there been any agreements made with you, other than what's in the plea agreement that I went over with you, any other agreements?

MR. P                No.

(Plea Transcript pp. 32)
***

THE COURT Have you understood all of my questions here today?

MR. P                Yes.

THE COURT: Have you understood everything I explained to you here today?

MR. P                Yes.

THE COURT: Have all of your answers been truthful?

MR. P                Yes.

THE COURT: Do you have any questions at all about your guilty plea -- or your no contest plea or any of the rights I have explained to you? Any questions whatsoever?

MR. P                : No.

THE COURT: Did you freely and voluntarily tender your plea of no contest to this Court?

MR. P                Yes.

THE COURT: The Court, after due consideration of the facts and circumstances developed by the responses and statements made by the defendant, and the statements made by both the attorney for the defendant, as well as the attorney for the State find as follows: The defendant -- the record in this case reflects the defendant's attorney received a copy of the indictment in this case. The defendant understands the nature and meaning of the charges, contained against him in that indictment. The defendant has

an attorney who is competent in criminal matters. The defendant is totally satisfied with the representation and advice that he has received from his attorney. The Court further notes that the defendant has separate counsel, and separate charges in Lewis County, West Virginia, and that he has recently spoke with his Lewis County counsel and spoke to him what was going on in Gilmer County.

The defendant has consulted with and has been advised by his attorney, with respect to his Constitutional rights and the waiver of those rights. The defendant understands that he has the right to a public trial by an impartial jury, being 12 persons and has the right to have the State prove its case against him beyond a reasonable doubt, but by pleading guilty, he thoroughly understands he waives such a trial and will not receive such a trial.

The Court also finds that he understands he has the following Constitutional rights prior to and during trial. He has a rights to stand silent during all proceedings. He has a right to confront, cross-examine his accusers. He has a right to present witnesses in his own defense and to testify in his own defense. He has the right to petition for appeal for any conviction for any errors of law. He has the right to move to suppress and illegally obtained evidence and illegally confessions, if any, and the right to challenge in the trial court on appeal all pretrial proceedings.

The Court further finds that the defendant understands by pleading no contest, he waives all pretrial defects with regards to and among others, his arrest, the gathering of evidence, prior confessions, as well as all non-jurisdictional defects in criminal proceedings. He understands that any plea bargaining agreement appears in this case, is not binding on this Court with respect to punishment or probation.

He understands that he could be sentenced to penitentiary of this State for a term generally of not less than five, nor more than 15 years on each count of incest, and that this Court could run those sentences consecutively, which could be not less than ten, nor more than 30 years.

He understands that once this Court accepts his plea, he cannot withdraw his plea, unless he seeks to do so prior to sentencing, and he can show a substantial injustice require that he be permitted to withdraw his plea. He understands that once this Court imposes sentencing, even if this Court imposes a maximum sentence allowed by law, he cannot withdraw his plea. He understands that he will be subject to supervised release for a period up to 50 years, upon release from the penitentiary. He understands that he is pleading to a felony and therefore, cannot have in is possession or subject to his dominion and control, any firearms for the rest of his natural life. The Court finds the defendant has knowingly, intelligently waived his Constitutional rights, that he has freely, voluntarily, intelligently, and knowingly understands that he has tendered to this Court, his oral plea of no contest to the feloniously offense of incest as contained in Count Eight and Nine of the indictment.

Upon due consideration of the statements made by the defendant and representations made to the Court by the defendant's attorney, the prosecuting attorney, and the evidence proffered in this case, I find the defendant has knowingly, freely, voluntarily, intelligently, and with mature advise from his attorney, made a choice as a course of action in this case, among all of the other alternatives made available to him, and that he has not been coerced within the meaning of the Fifth Amendment of the United States Constitution. And that he's entered this plea in a reasonable effort to avoid a possibility of a significant higher penalty, that might be imposed in this case.

I further find the defendant has voluntarily, knowingly, and understandingly consented to the possible imposition of a prison sentence, even though he is unwilling to admit the participation in the crime, because he has intelligently concluded, with the assistance of competent counsel, that his interest require a guilty plea. I further find -- excuse me, a no contest plea. I further find the record in this case, supports a conclusion that there is a significant probability that a jury would convict the defendant of all charges contained in the indictment in this case. The Court further finds the defendant understands he is required to undergo a sexual offender's evaluation, prior to this Court considering any request for probation. The Court finds that there is a factual basis supporting a no contest plea. The Court notes the defendant has received a very, very favorable plea agreement in this case. And if not for the fact that this victim is under the age of 12, and the trauma of trial, this Court would not hesitate to reject this plea. And quite frankly, he is receiving a very favorable plea agreement. And based upon his attitude and no contest plea, I would have no qualms about going to trial, and if he gets convicted of all of the offenses, he gets convicted of them, but I have to consider the victim and the age of the victim in this case. Therefore, the Court finds the plea agreement is consistent with the fair administration of justice, and the Court is of the opinion to, and does hereby accept the defendant's plea of no contest tendered to this Court.

(Plea Hearing pp. 41-47).

***

Based on these facts, the Court finds nothing in the record to support a conclusion that the petitioner was coerced into his plea agreement by trial counsel, nor is there any evidence to suggest the petitioner was under the influence of, or suffering withdrawal from any controlled substances. Therefore, because the entry of his plea was a knowing and voluntarily act, the petitioner is not entitled to relief as a matter of law.

The petitioner next argues that his no contest plea was involuntary because he was found guilty of a crime he did not commit, and in addition, there being no factual basis upon which the trial court should have accepted the plea. As to the first part of this argument, the petitioner avers that even though he pled no contest, he did not commit those crimes and therefore, cannot be found guilty of the same. The nature and purpose of a no contest plea have long been supplanted in this country's jurisprudence since the seminal case of *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L. Ed.2d 162 (1970); and was formally adopted by the West Virginia Supreme Court in *Kennedy v. Frazier*, 178 W.Va. 10, 357 S.E.2d 43 (1987). *Alford* stands for the proposition that a guilty plea that represents a voluntary and intelligent choice among the alternatives available to a defendant is not coerced within the meaning of the Fifth Amendment simply because it was entered into to avoid the possibility of a significantly higher penalty. The U.S. Supreme Court held that there is no bar to imposing a prison sentence upon an accused who is unwilling to admit guilt but who is willing to waive trial and accept sentence. Based on this reasoning, the Alford and *Kennedy* Courts found that:

> An accused may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interest require a guilty plea and the record supports the conclusion that a jury could convict him.

In other words, by pleading no contest to an offense, a defendant is making an informed and knowing decision that considering the facts and circumstances of his case, including any possible defenses, in conjunction with, the pending charges and the possible penalty associated therewith, it is in his or her best interest, even though not formally admitting guilt, to consent to the imposition of a prison sentence on one or more charges to avoid potentially facing a more severe sentence should a jury return a guilty verdict on all pending charges. In the present case, the Court finds the trial court extensively informed the defendant of his constitutional rights and the effect of a guilty

plea (Plea Transcript pp. 7 to 37) and as part of that discussion, the trial court informed the defendant regarding a plea of no contest as follows:

\*\*\*

THE COURT: Well, let me explain to you, you do have the right, if you so desire, and you can talk to your lawyer about this, but you can enter a plea of no contest. And what you're doing by entering a plea of no contest --

MR. P          Okay.

THE COURT: -- is you're saying that I'm not going to admit to guilt --

MR. P          Okay.

THE COURT: -- but I'm not going to contest these charges.

MR. P          Okay.

THE COURT: Because I have determined -- and if this is the case, then it's up to you. It's what you determine -- that looking at what I'm pleading to, entering a plea of no contest to, versus what I can be convicted of if I went to trial, that I would enter that plea as to not contest these charges, because I'm eligible for parole in ten years. Doesn't mean you'll get parole, but the maximum served, if you enter this, you're eligible for parole in ten years. And if you go to trial, and you get convicted of all this, it's a life sentence, because you will not live another 110 years.

MR. P          No, nobody will.

THE COURT: But if you want a chance to talk to you lawyer, and you want to enter a plea of no contest, because that's in your best interest, I'll let you enter that plea, but if you enter a plea of not guilty, then you're required to go to trail.

MR. P          Okay.

THE COURT: Do you want a chance to talk to Mr. Karickhoff?

MR. P          If you don't care.

THE COURT: I don't care. (WHEREUPON, a recess was taken, after which the following proceedings were had.)

THE COURT: Mr. Karickhoff?

MR. KARICKHOFF: Your Honor, I believe Mr. P          · is going to plead no contest to the two charges.

THE COURT: Mr. P          as to the charge contained in Count Eight of the indictment, that on or about the 9th day of May, 2013, and between the 9th day of May, 2014, here in Gilmer County, West Virginia, you did willfully, intentionally, unlawfully, knowingly, and feloniously engage in sexual intercourse with your daughter, K.P., by penetrating her vagina with your penis, while on the couch of the living room in your home, at a time separate and apart as to those in Count Seven of the indictment, against the peace and dignity of the State; how do you plead?

MR. P          : No contest.

THE COURT: That as to the charge contained in Count Nine of the indictment, that on or about the 9th day of May, 2013 and the 9th day of May, 2014, here in Gilmer County, West Virginia, that you did willfully, intentionally, unlawfully, and knowingly engaged in sexual intercourse with your daughter, K.P., by penetrating her vagina with your penis, while on the couch of the living room, in your home, at

a time separate and apart from that alleged in Count Seven and Eight of the indictment, against the peace and dignity of the State; how do you plead?

MR. P No contest.

THE COURT: Mr. Prosecutor, what does the State believe it can prove, if case proceeded to trial?

MR. HOUGH: The State would be able to prove beyond a reasonable doubt that John M P did between the 9th day of May, 2013 and the 9th day of May, 2014, here in Gilmer County, West Virginia, did willfully, intentionally, unlawfully, knowingly, and feloniously engage in sexual intercourse with your daughter, K.P., by penetrating her vagina with your penis, while on the couch of the living room of Mr. P 's, the defendant's home, at a time separate and apart from the alleged allegation in Count Seven of the indictment, against the peace and dignity of the State in violation of §61-8-12(b). The State would also be able to prove, beyond a reasonable doubt, that John M . P , did between the 9th day of May, 2013 and the 9th day of May, 2014, here in Gilmer County, West Virginia, he did willfully, intentionally, unlawfully, knowingly, and feloniously engage in sexual intercourse with your daughter, K.P., by penetrating her vagina with your penis, while on the couch of the living room of his home, at a time separate and apart from that that is alleged in Count Seven and Eight of this indictment, against the peace and dignity of the State of West Virginia in violation of §61-8-12(b). The facts will support, that after a forensic interview, the children of that defendant, they disclosed sexual assault in the first degree by Mr. P and his daughter, in the living room, on a number of occasions. The West Virginia State Police did an interview of Mr. P , who then did admit to those activities.

THE COURT: Mr. P , you've heard what the State of West Virginia said, and of course you deny that happened. Do you understand what they believe they can prove, if this went to trial? Do you understand that?

MR. P : Yes.

THE COURT: I know you're not admitting to it, but do you understand what they say they can prove?

MR. P Yeah.

(Plea Transcript pp. 34 to 39).

***

Based on the trial court's extensive conversation with the defendant regarding his constitutional rights, in addition to the excerpt cited above regarding no contest pleas, the Court finds the petitioner was duly advised and understood the concept of a no contest pleas, as well as voluntarily entered into the same. Here, it is undisputed that the petitioner acknowledged his decision to enter a no contest plea was driven, at least in part, by the possibility of facing a

minimum of ten years in prison under the plea versus a potential minimum penitentiary sentence of 110 years if convicted by a jury of all charges. Furthermore, as the laws of West Virginia make clear, because a no contest plea, is still a conviction, it is for all practical purposes, a guilty plea. Case in point, a plea of no contest, or as it is known by its Latin term, a plea of *nolo contendere*, which literally means " 'I do not wish to contend[,]' ... has its origin in the early English common law. It constitutes an implied confession of guilt." *State ex rel. Clark v. Adams*, 144 W.Va. 771, 778, 111 S.E.2d 336, 340 (1959), cert denied, 363 U.S. 807, 80 S.Ct. 1242, 4 L.Ed.2d 1149 (1960); see also *Myers v. Frazier*, 173 W.Va. 658, 665, n. 10, 319 S.E.2d 782, 790 n. 10 (1984). Therefore, the Court finds the petitioner's pragmatic argument that he cannot be found guilty because he only pled no contest to be for all intents and purposes of law, a distinction without difference and likewise of no significance in this case.

The petitioner also argues the trial court lacked a factual basis upon which to accept his no contest plea. Having reviewed the record in this case, this Court disagrees. As set forth above, as part of the plea taking process the State of West Virginia set forth what it believed it could prove had the case gone to trial. Further, the trial court made the following findings at the conclusion of the plea hearing:

> THE COURT: The Court, after due consideration of the facts and circumstances developed by the responses and statements made by the defendant, and the statements made by both the attorney for the defendant, as well as the attorney for the State find as follows: The defendant -- the record in this case reflects the defendant's attorney received a copy of the indictment in this case. The defendant understands the nature and meaning of the charges, contained against him in that indictment. The defendant has an attorney who is competent in criminal matters. The defendant is totally satisfied with the representation and advice that he has received from his attorney. The Court further notes that the defendant has separate counsel, and separate charges in Lewis County, West Virginia, and that he has recently spoke with his Lewis County counsel and spoke to him what was going on in Gilmer County. The defendant has consulted with and has been advised by his attorney, with respect to his Constitutional rights and the waiver of those rights. The defendant understands that he has the right to a public trial by an impartial jury,

being 12 persons and has the right to have the State prove its case against him beyond a reasonable doubt, but by pleading guilty, he thoroughly understands he waives such a trial and will not receive such a trial. The Court also finds that he understands he has the following Constitutional rights prior to and during trial. He has a rights to stand silent during all proceedings. He has a right to confront, cross-examine his accusers. He has a right to present witnesses in his own defense and to testify in his own defense. He has the right to petition for appeal for any conviction for any errors of law. He has the right to move to suppress and illegally obtained evidence and illegally confessions, if any, and the right to challenge in the trial court on appeal all pretrial proceedings. The Court further finds that the defendant understands by pleading no contest, he waives all pretrial defects with regards to and among others, his arrest, the gathering of evidence, prior confessions, as well as all non-jurisdictional defects in criminal proceedings. He understands that any plea bargaining agreement appears in this case, is not binding on this Court with respect to punishment or probation. He understands that he could be sentenced to penitentiary of this State for a term generally of not less than five, nor more than 15 years on each count of incest, and that this Court could run those sentences consecutively, which could be not less than ten, nor more than 30 years. He understands that once this Court accepts his plea, he cannot withdraw his plea, unless he seeks to do so prior to sentencing, and he can show a substantial injustice require that he be permitted to withdraw his plea. He understands that once this Court imposes sentencing, even if this Court imposes a maximum sentence allowed by law, he cannot withdraw his plea. He understands that he will be subject to supervised release for a period up to 50 years, upon release from the penitentiary. He understands that he is pleading to a felony and therefore, cannot have in is possession or subject to his dominion and control, any firearms for the rest of his natural life. The Court finds the defendant has knowingly, intelligently waived his Constitutional rights, that he has freely, voluntarily, intelligently, and knowingly understands that he has tendered to this Court, his oral plea of no contest to the feloniously offense of incest as contained in Count Eight and Nine of the indictment. Upon due consideration of the statements made by the defendant and representations made to the Court by the defendant's attorney, the prosecuting attorney, and the evidence proffered in this case, I find the defendant has knowingly, freely, voluntarily, intelligently, and with mature advise from his attorney, made a choice as a course of action in this case, among all of the other alternatives made available to him, and that he has not been coerced within the meaning of the Fifth Amendment of the United States Constitution. And that he's entered this plea in a reasonable effort to avoid a possibility of a significant higher penalty, that might be imposed in this case. I further find the defendant has voluntarily, knowingly, and understandingly consented to the possible imposition of a prison sentence, even though he is unwilling to admit the participation in the crime, because he has intelligently concluded, with the assistance of competent counsel, that his interest require a guilty plea. I further find -- excuse me, a no contest plea. I further find the record in this case, supports a conclusion that there is a significant probability that a jury would convict the defendant of all charges contained in the indictment in this case. The Court further finds the defendant

understands he is required to undergo a sexual offender's evaluation, prior to this Court considering any request for probation. The Court finds that there is a factual basis supporting a no contest plea. The Court notes the defendant has received a very, very favorable plea agreement in this case. And if not for the fact that this victim is under the age of 12, and the trauma of trial, this Court would not hesitate to reject this plea. And quite frankly, he is receiving a very favorable plea agreement. And based upon his attitude and no contest plea, I would have no qualms about going to trial, and if he gets convicted of all of the offenses, he gets convicted of them, but I have to consider the victim and the age of the victim in this case. Therefore, the Court finds the plea agreement is consistent with the fair administration of justice, and the Court is of the opinion to, and does hereby accept the defendant's plea of no contest tendered to this Court. Upon your no contest plea, John M       P            it's the judgment of the Court that you be and hereby found guilty of the felonious offense of incest, contained in Court Eight of the indictment, and upon your no contest plea, you be and are hereby found guilty of incest as contained in Count Nine of the indictment. . .

(Plea Transcript pp. 41 to 47).

***

This Court finds no error in the trial court's finding of a factual basis for no contest plea. The facts set forth by the State of West Virginia clearly establish a prima facie case for the charges contained in the indictment and given the reasons provided by the trial court, this Court also believes the plea agreement was consistent with the proper administration of justice. Therefore, there being a factual basis to support the plea, this claim for relief is denied as a matter of law.

The crux of petitioner's final argument is that he lacked the requisite mental capacity to freely, knowingly, and voluntarily enter a plea in his criminal case. However, for the reasons previously set forth by this Court in discussing the petitioner's competency argument, this Court does also deny this ground for relief.

## Pre-Trial Defects

The petitioner also alleges numerous pre-trial defects as basis for habeas corpus relief. Cumulatively, the petitioner challenges his conviction on the basis of (1) an inculpatory statement to law enforcement that was not freely and voluntarily given resulting in a coerced confession; (2)

irregularities in his arrest; (3) excessive bail; and (4) constitutional error in evidentiary rulings by the trial court. The Court finds that it need not address these assignments of error because the petitioner freely and voluntarily waived his right to challenge these issue when he entered his plea and therefore, these issues are forever barred by the doctrine of res judicata.

As previously noted above, in *McKenzie*, our state Supreme Court addressed the impenetrable soundness of a properly executed guilty plea, holding,

> [w]here the transcript of the colloquy which occurred between the court and the accused before the acceptance of the plea of guilty, and where that transcript conclusively demonstrates that there was a knowing and intelligent waiver of those rights necessarily surrendered as a result of a guilty plea, the issue is *res judicata* in a subsequent action in habeas corpus. . .

*Call v. McKenzie*, 159 W.Va. at 195. Here, after reviewing thoroughly reviewing the transcript from the plea hearing in the underlying case, the Court finds the petitioner, who entered no contest plea knowingly and intelligently waived all pre-trial and non-jurisdictional defects in the case against him, including any error in his arrest, illegally obtained statements or evidence, and the like. At his plea hearing, the trial court explained his legal rights and the effect of entering a plea on those rights, in exhaustive detail, and in response, petitioner repeatedly stated that he understood his rights. Therefore, this Court finds as a matter of law, that by nature of entering a plea, the petitioner is forever barred from challenging on appeal or in habeas corpus proceedings any and all alleged pre-trial defects. For these reasons, the petitioner is denied relief on this assignment of error.

Excessive Sentence

Next, the petitioner argues the trial court imposed an excessive sentence upon him by running his sentences consecutively; as well as subjecting him to fifty years supervision upon release from incarceration. As previously set forth, the petitioner pled no contest to two counts of

the felonious offense of Incest, in violation of W.Va. Code § 61-8-12(b). This offense carries a penitentiary sentences of not less than five (5) nor more than fifteen (15) years. The trial court imposed the statutory sentence running them consecutively, resulting in an aggregate sentence of not less than ten (10) nor more than thirty (30) years. The petitioner argues that this sentence was excessive because it was ran consecutively instead of concurrent. The Court begins by noting that sentences imposed by the trial court, if within statutory limits and if not based on some impermissible factor, are not subject to appellate review. Syllabus Point 4, *State v. Goodnight*, 169 W.Va. 366 (1982). Moreover, when defendants receive multiple convictions, trial courts are vested with wide discretion in deciding whether to impose concurrent or consecutive sentences. *See State v. Allen*, 208 W.Va. 144, 155 (1999). The West Virginia Supreme Court has also recognized that consecutive sentences are an appropriate mechanism for imposing a distinct punishment for each of two criminal acts. *State v. Holcomb*, 178 W.Va. 455, 462 (1987). In this case, the petitioner stands convicted of two criminal acts of incest involving his minor daughter, K.P. Therefore, because the sentence imposed is within statutory limits and the trial court has the wide discretion to run sentences concurrently or consecutively, this Court finds no error on the part of the trial regarding the sentenced imposed upon the petitioner.

In addition to the penitentiary sentence, the trial also imposed fifty (50) years of supervised release pursuant to the provisions of W.Va. Code § 62-12-26. The petitioner argues the imposition of supervised release subjects him to double jeopardy by penalizing him twice for the same offenses. This Court disagrees. This specific issue has been addressed by the West Virginia Supreme Court of Appeals in *State v James*, 227 W.Va. 407, 710 S.E.2d 105 (2011). *James* determined that the provision of W.Va. Code § 61-12-26 "provide that a court impose a period of extended supervision as part of the criminal sentence for certain specified offenses, and sets forth

the manner in which the supervision is to be administered and enforced." Further, in deciding that this statute was facially constitutional, the *James* Court held that W.Va. Code § 62-12-26 (2009):

> 6. Is not facially unconstitutional on cruel and unusual punishment grounds in contravention of the Eighth Amendment to the United States Constitution or Article III, § 5 of the West Virginia Constitution
>
> 9. does not facially violate due process principles of the Fourteenth Amendment to the Constitution of the United States or Article III, Section 10 of the Constitution of West Virginia. The terms of the statute neither infringe upon a criminal defendant's right to jury determination of relevant factual matters, nor are the provisions of the statute regarding conditions of unsupervised release unconstitutionally vague.
>
> 11. The imposition of the legislatively mandated additional punishment of a period of supervised release as an inherent part of the sentencing scheme for certain offenses enumerated in W.Va. Code § 62-12-26 (2009) does not on its face violate the double jeopardy provisions contained in either the United States Constitution or the West Virginia Constitution.

Syllabus Points, 6, 9 and 11, *James,* supra. Based on this precedent, this Court unequivocally rejects the petitioner's argument on this issue and does likewise deny his claim as a matter of law.

### Ineffective Assistance of Counsel

The final ground set forth in this habeas corpus petition is the oft-cited argument of ineffective assistance of counsel. In sum, the petitioner argues that Mr. Karickhoff was ineffective because he did not file an appeal, did not subpoena witnesses, and based on the cumulative effect of all the errors raised in this petition. It is argued these failures are sufficient enough to survive analysis under the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington,*[1] and therefore warrants habeas corpus relief.

Ineffective assistance of counsel claims in habeas corpus proceedings are reviewed under the axiomatic two-pronged standard set forth by our nation's Supreme Court in *Strickland.* Pointing to that holding the West Virginia Supreme Court of Appeals espoused in syllabus point

---

[1] *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *see also* Syl. Pt. 5, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995).

five of *State v. Miller*[2] that the burden of proof is on the party alleging counsel was ineffective to show that (1) counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Further, as our highest state court explained in syllabus point five of *Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995), a court need not addressed both prongs of the ineffective assistance standard set forth in *Strickland* and *Miller* but may dispose of such a claim based solely on petitioner's failure to satisfy either prong of the test.

The West Virginia Supreme Court of Appeals has further noted that, "under these rules and presumptions, the cases in which a defendant may prevail on the ground of ineffective assistance of counsel are few and far between one another. This result is no accident but instead flows from deliberate policy decisions [of the West Virginia Supreme Court] and the United States Supreme Court have made mandating that "[j]udicial scrutiny of counsel's performance must be highly deferential" and prohibiting "[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance[.]" *Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66. In other words, [courts] should always presume strongly that counsel's performance was reasonable and adequate. A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a "wide range." *Miller*, 194 W.Va. at 16, 459, S.E.2d at 127. The Court will now apply those aforesaid principles to the present case.

With respect to the alleged failure of Mr. Karickhoff to file an appeal in the criminal case, this Court finds that other than a blanketed statement in this petition, the petitioner has failed to

---

[2] *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

set forth any evidence at the omnibus hearing to address this claim. There is no evidence of the petitioner requesting an appeal or even the legal issue upon which he sought Mr. Karichoff to appeal. The West Virginia Supreme Court of Appeals has on more than one occasion commented that "a skeletal argument, really nothing more than an assertion, does not preserve a claim...[courts] are not like pigs hunting for truffles buried in briefs (*quoting U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Further, "although briefs are liberally construed in determining issues presented for review, issues...mentioned only in passing but are not supported with pertinent authority, are not considered." *See e.g. State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996). Therefore, it is not the responsibility of courts to scour through the record in an attempt to identify the specific conduct which a party, or in this case, the petitioner readily complains of through a broad and ambiguous assertion because to do so would be nothing more than speculation. Likewise, the law is clear that the burden of proof is on the petitioner to prove claims of ineffective assistance of counsel and this Court finds that the skeletal argument set forth by the petitioner fails to specifically cite the errors he alleges were committed, as well as fails to cite legal authority to support his argument. Therefore, the Court denies this claim as a matter of law.

Next, it is opined that Mr. Karickhoff failed to subpoena witnesses on the petitioner's behalf. In the petition, it is argued that the petitioner gave his counsel the names and addresses of witnesses to contact regarding his cases; however, at the omnibus hearing the petitioner testified that he did not know he had right to have witnesses or even to testify on his own behalf. Likewise, the petitioner did not present any evidence as to the witness list he provided Mr. Karickhoff. Conversely, Mr. Karickhoff stated that he did not recall his client ever giving him a list of witnesses

but did discuss possible defenses to his case. Therefore, the Court finds the petitioner, agan has failed to meet his burden in this regard and his claim must fail as a matter of law.

Finally, the petitioner sets forth that the cumulative effect of all the errors alleged in this petition support a finding of ineffective assistance of counsel. However, for the reasons previously set forth, each of those assignments of error have been denied by this Court and thus do not support the petitioner's ineffective assistance of counsel argument. Further, At the omnibus hearing, the petitioner testified that he estimated meeting with Mr. Karickhoff ten to twelve times throughout his case and that he believed they had sufficient time to discuss the same. Further, during the plea taking process the trial court inquired of the defendant if he was satisfied with Mr. Karickhoff's representation, to which the defendant stated he was satisfied and had no complaints. (Plea Transcript pp 40-41). Accordingly, the Court is of the opinion the petitioner has failed to set forth sufficient evidence of any degree to support his claim for ineffective assistance of counsel and does hereby deny the same as a matter of law.

## IV. CONCLUSION

Based on the foregoing, it is accordingly **ADJUDGED** and **ORDERED** that this post-conviction petition for writ of habeas corpus relief be and is hereby **DENIED**. This case is **DISMISSED** and **STRICKEN** from the active docket of this Court. The petitioner is hereby **REMANDED** to the custody of the Department of Corrections to serve the sentence previously imposed by the trial court.

The parties' objections are noted. The Clerk shall forthwith send certified copies of this Order to counsel of record for the parties.

**ENTERED** this __12__ day of April, 2018.

_____
JACK ALSOP, JUDGE